(January 29, 1987)

■ In the Matter of the Estate of BONAVENTURA E. DEVINE, Deceased. LAWRENCE W. KRIEGER et al., Respondents; SUSAN D. CAMILLI, Appellant, et al., Respondents.—Order, Surrogate's Court, New York County (Renee R. Roth, S.), entered February 18, 1986, denominated an "Order Construing Order For Preliminary Letters Testamentary", which granted petitioners-respondents' motion for an order amending the order, entered April 8, 1985, granting respondents preliminary letters testamentary, to the extent of construing said order as requiring interested parties seeking to have all papers of the decedent made available for examination and copying to comply with the provisions of CPLR article 31 and denied respondent-appellant Susan Devine Camilli's cross motion for an order of contempt punishing respondents for disobedience of the initial order, affirmed, with costs to the appellant. Petitioners-respondents are directed to comply with the request of respondent-appellant, and the other respondents, to make all papers of the decedent available for inspection and copying pursuant to the order entered on April 8, 1985, which is in full force and effect as of the date of this order, unconditionally, and forthwith.

In March 1985, Bonaventura E. Devine died at the apparent age of 82, leaving a last will and testament dated April 21, 1982, and an estate worth approximately $20,000,000. Respon-

dents Lawrence W. Krieger, the draftsman of the 1982 will, and the Bank of New York, as the named coexecutors, propounded said will for probate. Collectively, respondents constitute the board of directors of the charitable foundation which stands to receive 95% of the estate under the will. The 1970, 1974, 1977, and 1979 wills executed by the decedent, which were prepared by the law firm of Milbank, Tweed, Hadley & McCloy, made provisions for all of her children and none whatsoever for charitable gifts. Indeed, the three most recent of these wills expressly disclaimed any intent to make charitable gifts, invoking past and future generosity on this score.

Probate was delayed when one of the decedent's children learned that he had been disinherited and committed suicide. Respondents accordingly petitioned the court for the issuance of preliminary letters testamentary pursuant to SCPA 1412. They submitted the order in question in the very form they now contend should be changed. In pertinent part, the order essentially tracks the language of SCPA 1412 (4), and directs respondents, as preliminary executors, to "retain custody of and carefully preserve all papers of the decedent and [to] make them available for examining and copying by any person or persons interested in the decedent's estate."

Respondent-appellant Susan Devine Camilli, a resident of Paris, France, one of the five favored children under the 1982 will, and a major beneficiary and a named executor under each of the decedent's prior wills, requested to examine and copy all of the decedent's papers. The executrix of the deceased son and the three other disinherited children joined in her request. The preliminary executors took the position that they were required "to vigorously and effectively propound the probate of the [decedent's] will", and denied the request, on the ground that the order was subject to the disclosure requirements of CPLR article 31. They submitted the issue to the Surrogate's Court by moving to amend the previous order entered April 8, 1985. The Surrogate granted the motion to the extent of construing the prior order to require compliance with CPLR article 31, and, without comment, denied the cross motion of appellant to punish respondents for contempt for disobedience by order entered February 18, 1986 and opinion reported *sub nom. Matter of Devine* (130 Misc 2d 933).

We affirm the order on appeal insofar as the Surrogate's Court did not amend, but only construed, the complained-of language in the prior order in accordance with its purported construction of SCPA 1412 (4). "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the

intent of the Legislature [citations omitted], and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used [citations omitted]." *(Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205, 208 [1976].) Since the language of SCPA 1412 (4), which directs the preliminary executor to make "all papers of the decedent * * * available for examination and copying", is clear and unambiguous, the Surrogate erred in resorting to the legislative history of CPLR article 31 to conjecture that section 1412 does not mean what it says. *(Meltzer v Koenigsberg,* 302 NY 523, 525 [1951].) Reliance upon the legislative history of CPLR article 31 also disregarded CPLR 101 and SCPA 102, which unequivocally state that the CPLR is inapplicable to situations where "other procedure is provided by [the SCPA]" which is "inconsistent" with the CPLR. Section 1412 is inconsistent with CPLR 3120 insofar as under the latter papers must be specified with "reasonable particularity", and disclosure may only be available after appellant files objections. *(See, Matter of Lachman,* 100 Misc 2d 21, 25, 26-27 [Sur Ct, NY County 1979].) Although this is an apparent issue of first impression, several commentators have interpreted the SCPA 1412 (4) language respecting the making of decedent's papers available to interested parties as a disclosure procedure. (10B Cox-Arenson-Medina, NY Civ Prac ¶ 1412.04 [b]; *see,* 2 Warren's Heaton, Surrogates' Courts § 149-A, ¶ 9.)

Furthermore, the SCPA expressly refers to the CPLR wherever CPLR provisions are to govern procedures under the SCPA, and omits such references wherever the SCPA provides an "other procedure" that is intended to supersede the CPLR. The absence of a cross reference in section 1412 strongly suggests that it provides an "other procedure" for disclosure in probate proceedings that preempts CPLR article 31.

Our conclusion is reinforced by the legislative history of Surrogate's Court Act § 153-a, the predecessor to section 1412, which indicates that the underlying purpose of the enactment was to "effect some simplification in probate proceedings", to "speed up the proceeding and reduce the expense", and to "speed the administration and reduce the number of feigned objections" (Second Report of Temporary State Commn. on Modernization, Revision and Simplification of Law of Estates, 1963 NY Legis Doc No. 19, at 95-96). Clearly, permitting interested parties such as appellant access to all of the decedent's papers can be expected to avoid any unnecessary will contest based upon allegations of undue influence. (Cox-Aren-

son-Medina, *op. cit.)* Stated differently, permitting preliminary executors to obstruct disclosure will increase the incidence of contested probates, thereby defeating the purpose of SCPA 1412 (4).

Appellant should also be afforded unconditional access to the decedent's papers based upon practical considerations. That she should spend some time culling the 45 or so cartons of uninventoried papers is preferable to the wasted time, effort, and expense entailed in having respondents sift through the papers for purposes of an adversarial determination, resulting in motion practice.

The preliminary executors here are interested parties, based upon the sizeable commissions they stand to receive and, to a much lesser extent, their status as directors on the board of the trustees of the major beneficiary under the propounded will. In contrast to other civil litigation, where the parties are naturally and necessarily adversarial to each other, the preliminary executors are fiduciaries with respect to all persons having interests in the decedent's estate. Ideally as executors they should assume a neutral, not an adversarial, posture in relation to interested parties. To this end, they should not be afforded advantages in protecting the substantial benefits of their offices from the rightful inquiries of parties who have, or may have, distinct rights and interests in the estate. Particularly since their temporary custody of the papers of the decedent derives from judicial recognition of the instrument under which they purport to act, such papers are not entitled to the same protection as is accorded in other civil litigation to papers that are the private property of a party.

We disagree with the Surrogate's view that the language in question is only focused upon the necessity to make only such information as a permanent fiduciary might be compelled to furnish under SCPA 2102 (1) available to interested parties on an equal basis. The two statutes are not coextensive. Since section 1412 refers to "all papers" it contemplates disclosure of information beyond information about assets such as permanent fiduciaries must furnish under SCPA 2102 (1). Additionally, disclosure under SCPA 2102 (1) involves not an informal request, but the commencement of a separate proceeding, which arguably cannot be maintained, even by the contestants in a probate proceeding, unless and until the will objected to has been denied probate. *(Estate of Carroll,* NYLJ, May 26, 1977, p 10, col 4 [Sur Ct, NY County].) Nor can the preliminary executor be allowed to justify the withholding of

information that would jeopardize probate on the ground that he had shown no favoritism.

We strongly disapprove of this litigation, which seems but part of respondents' strategy to make a will contest cost prohibitive. However, their actions in seeking judicial clarification cannot be characterized as an abusive litigation tactic warranting sanctions. Section 1412 had never before been judicially construed. As to the application to punish respondents for contempt, it did not contain the requisite warning legend pursuant to Judiciary Law § 756. The absence of such a warning was fatal since section 756 requirements are jurisdictional. (*Murrin v Murrin,* 93 AD2d 858 [2d Dept 1983]; *Barreca v Barreca,* 77 AD2d 793 [4th Dept 1980].) Concur—Murphy, P. J., Lynch, Rosenberger, Ellerin and Wallach, JJ.