**YORK HUNTER CONSTRUCTION, INC., Plaintiff,**

v.

**AVALON PROPERTIES, INC., Avalon Bay Communities, Inc., Sasha Blake, Robin Camin, John Sear, Harvey Paulvin, Paul Gruppo, Mario Bisurdi, Richard Desio, The State of New York, The Village of Mamaroneck and John and Jane Doe 1–150, Defendants.**

No. 99 Civ. 11572 CM.

United States District Court, S.D. New York.

June 9, 2000.

Frederick Cohen, Ross & Cohen, L.L.P., New York, NY, Daniel E. Katz, Bauman

Katz & Grill, LLP, New York, NY, for York Hunter Const., Inc.

John H. Reichman, Wachtel & Masyr, LLP, New York, NY, for Avalonbay Communities, Inc.

Daniel E. Katz, Bauman Katz & Grill, LLP, New York, NY, for National Union Fire Ins. Co.

## MEMORANDUM DECISION AND ORDER DISMISSING ACTION

McMAHON, District Judge.

This is an action to foreclose a mechanic's lien filed by Plaintiff York Hunter Construction, Inc., and for damages due to Plaintiff. The action was commenced in New York State Supreme Court, Westchester County, on or about October 19, 1999, by service of a summons with notice. The notice is quite detailed and clearly indicated that this was an action in "breach of contract, quantum meruit, account stated, wrongful termination and foreclosure of mechanic's lien." (Exhibit B to the Notice of Motion to Amend Summons and Complaint, dated March 23, 2000.) The matter was timely removed to this Court last autumn on the ground of diversity of citizenship.

At the time of removal, citizenship was not diverse, in that Plaintiff, a New York corporation, had joined as parties defendant certain municipalities and the tenants at the subject property, all of whom were citizens and residents of New York. Therefore, Plaintiff filed a motion to remand. It also served a Verified Complaint, dated December 17, 1999.

Defendant Avalon, responding to the remand motion, moved to dismiss the tenant-defendants, as well as the State of New York, The Village of Mamaroneck, and certain unnamed "John and Jane Doe" Defendants, as misjoined parties. The Court granted the motion to dismiss the tenants (and also intended to grant the motion to dismiss the municipal defendants, although my memorandum notation does not so

state). On the record then before me, the Court denied the motion to remand. The Court did not rule, and did not intend to rule, on the issue of the John and Jane Doe Defendants, whose identities and citizenship were unknown to me, although it was represented that these individuals would be "tenants, occupants, lenders, mortgagees or other persons or entities who may be in possession of, or may have interests in the Property in question and which are subsequent to or subordinate to the mechanics lien being foreclosed herein." (Exh. B to Notice of Motion at 3–4.)

On April 5, 2000, Plaintiff moved to amend the summons and complaint to identify the John and Jane Does as various other persons having mechanic's liens on the property. Pursuant to Section 44 of New York's Lien Law, all lienors having prior or subsequent liens notices of which have been filed against the same real property or public improvement prior to the filing of the notice of lis pendens in an action to enforce a lien are "necessary parties defendant." Therefore, all lienors, prior or subsequent to the plaintiff, would be necessary parties in this action under controlling New York law. As the record on this motion has developed, it appears that several of these "John Doe" lienors have filed their own actions against Avalon in the Westchester County Supreme Court. Indeed, the first such action, *American Building Supply Corp. v. Avalon Properties, Inc., et al.,* Index No. 8976/99, was filed on or about June 7, 1999, four months before this action was brought and five months before it was removed and appeared on this Court's docket. Both Plaintiff and Defendants are parties defendant in the *American Building Supply* action.

From the moving papers, it is apparent that granting Plaintiff's motion to amend the complaint will destroy diversity, as most, if not all, of the mechanic's lienors are citizens and residents of New York. Therefore, I asked the parties to submit letter briefs on several issues touching on the propriety of joinder in this instance.

In its letter brief, as in its main motion, Plaintiff argues that the other lienors must be joined before a Court can order foreclosure on its mechanic's lien. Plaintiff believes that the appropriate remedy is to join the other lienors and then to remand the case to the Westchester County Supreme Court, diversity having been destroyed by their joinder. But Plaintiff also argues that the pendency of the first-filed *American Building Supply* action in the State Supreme Court deprives the Court of jurisdiction to act, under the "common law rule of long standing" that "prohibits a court, whether state or federal, from assuming *in rem* jurisdiction over a *res* that is already under the *in rem* jurisdiction of another court." *Chesley v. Union Carbide Corporation,* 927 F.2d 60, 66 (2d Cir.1991). Alternatively, Plaintiff, citing *L. Harbert, Inc. v. Aetna Casualty & Surety Company,* 1997 WL 539778 (S.D.N.Y. Aug.28, 1997), argues that this Court should abstain in favor of the State Supreme Court, which now has at least three actions pending before it and which is likely to have more in the very near future (indeed, I was recently advised by letter that another mechanic's lien action was filed during the first half of May of this year in Westchester County Supreme Court).

Avalon does not contest—indeed, it admits (*see* letter of John H. Reichman, Esq. to the Court, dated May 10, 2000)—that the other lienors are necessary parties to the cause of action to foreclose the lien. However, it contends that joinder of the other mechanic's lienors will not destroy diversity jurisdiction, because the claims of those lienors (all of whom are apparently York Hunter's subcontractors) are subsumed in Plaintiff's claim against Avalon, which is seeking the full amount owed to York Hunter and all its subcontractors and trade creditors. This, Avalon claims, aligns the other lienors in interest with York Hunter and renders them parties plaintiff rather than parties defendant.

Avalon also argues that abstention would be inappropriate in this case, especially given what it calls the "glacial pace" of the proceedings in the State Supreme Court and its own substantial claims for damages against York Hunter for project delays— claims that are brought as compulsory counterclaims because York Hunter won the race to the courthouse, but that clearly could have been commenced by Avalon in this Court. Avalon's various letter briefs have not specifically addressed the issue of whether the pendency of the *American Building Supply* action effectively divests this court of jurisdiction over some or all of this action.

For the reasons stated below, this Court would be required to dismiss York Hunter's claim to foreclose a mechanic's lien were it to keep this case in federal court, because the *res* of that *in rem* claim is the subject of a prior proceeding in the New York State Supreme Court. However, the Court elects to exercise prudential abstention and dismisses the entire matter so that it can be brought along with all other foreclosure proceedings in the New York State Supreme Court, where the rights of all parties can be adjudicated. I note that either one of these rulings is sufficient to moot Plaintiff's original motion for leave to amend.

### 1. Because of the *Penn General/Chesley* Rule, Plaintiff's Foreclosure Claim Must be Dismissed

■ York Hunter's third cause of action seeks foreclosure of its mechanic's lien. It has come to the attention of this Court that an action seeking, *inter alia*, to foreclose a mechanic's lien on the same property was filed by American Building Supply Corporation in June 1999, four months before the present action was commenced.

■ Actions to foreclose mechanic's liens are *in rem* in nature. *See* N.Y. Lien Law § 70; *United States v. Certified Industries Inc.*, 361 F.2d 857, 860 ("There can be little doubt that the initial foreclosure proceeding in the state court was a proceeding *in rem*.") The American Building Supply Corporation action was prior in time to the instant case. Therefore, under the rule of *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 477, 56 S.Ct. 343, 80 L.Ed. 331 (1936) and *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935), it would be improper for this Court to assume jurisdiction over the same *res* (i.e., the premises developed by Avalon Bay) by entertaining Plaintiff's claim for foreclosure of its lien.

■ This common law rule—which York Hunter correctly identifies as one of long standing—was developed to maintain comity between courts. As the Ninth Circuit observed in *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1145 (9th Cir.1989), "such harmony is especially compromised by state and federal judicial systems attempting to assert concurrent control over the *res* upon which jurisdiction of each depends." The rule against concurrent *in rem* proceedings is a prudential limitation on the exercise of federal jurisdiction, rather than a constitutional limitation upon jurisdiction. But, as the Ninth Circuit noted, "This does not mean, however, that the matter is within the discretion of the district court. The language of *Penn General* indicates that a federal court *must* yield to a prior state proceeding." *Id.* (emphasis in original). Or, as the United States Supreme Court originally put the matter, "The jurisdiction of one court must of necessity yield to the other." *Penn General*, 294 U.S. at 195, 55 S.Ct. at 389. As a matter of comity and practicality, the court that first acquires jurisdiction over the *res* is the court that acts.[1]

---

**1.** This rule ousts a federal court of jurisdiction only where the state proceeding was the first filed. I have been advised of the commencement of several other mechanic's lien actions

in Westchester County Supreme Court, but they were all filed later than York Hunter's action. Thus, the pendency of those suits could not be the basis for invoking the *Penn*

■ York Hunter, having brought this prudential limitation on the Court's jurisdiction to my attention, suggests that it compels the Court not to act with respect to the entire matter. That, however, is not the law. The Second Circuit long ago held that federal district courts may adjudicate matters that indirectly relate to the state's exercise of *in rem* jurisdiction over a piece of property in a mechanic's lien foreclosure, as long as "the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Certified Industries,* 361 F.2d at 860 (quoting *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946)). Only one of York Hunter's three causes of action is a proceeding *in rem.* Its other two claims are for money damages. Jurisdiction over those claims is constitutionally founded on diversity of citizenship; the amount in controversy is exceeded by a substantial margin; and as a purely technical matter, no judgment of this Court on either York Hunter's claims for damages or on Avalon's counterclaims will affect the state court's ability to dispose of the *res* (i.e., the premises).

Accordingly, it seems that the proper remedy for the so-called *Penn General/Chesley* problem that York Hunter has brought to my attention is to dismiss Count Three of the Verified Complaint, while retaining jurisdiction over the damages claims.

**2. The Motion to Join the Other Lienors is Denied as Moot**

The motion for leave to amend to join the non-diverse mechanic's lienors now appears to be moot. The asserted basis for joining them was that they were necessary parties to an action to foreclose a lien under Section 44 of the Lien Law. But under *Penn General* and *Chesley,* this Court cannot exercise jurisdiction over that claim. Therefore, we have no need for the other lienors here, and I need not reach the question of whether they would more properly be joined as parties plaintiff or parties defendant.

**3. This is a Case for Prudential Abstention**

■ The rulings discussed above do not, however, completely dispose of this matter. York Hunter's suggests that this Court invoke so-called "prudential" abstention in this case under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). This argument presents a very close question.[2]

■ As Judge Preska of this court noted, in a factually similar case where she exercised prudential abstention and dismissed a damages suit that closely paralleled a lien foreclosure action pending in State Supreme Court, "*Colorado River* abstention is an exceptional doctrine, applicable only when the circumstances clearly merit it," so that the balance whenever such abstention is sought must be "heavily weighted in favor of the exercise of juris-

---

*General/Chesley* rule. Indeed, but for the fact that *American Building Supply* was filed before this case, it would be the Westchester County Supreme Court that would have to refrain from exercising jurisdiction over the foreclosure proceeding.

**2.** Apart from *Colorado River* abstention, courts traditionally abstain (1) when a criminal proceeding is pending implicating important state interests and an open avenue for review of constitutional claims is available in state court, *see Younger v. Harris,* 401 U.S. 37, 43–57, 91 S.Ct. 746, 750–56, 27 L.Ed.2d 669

(1971); (2) to avoid interfering with attempts to establish coherent state policy and issues of peculiarly local concern, *see Burford v. Sun Oil Co.,* 319 U.S. 315, 317–34, 63 S.Ct. 1098, 1099–1108, 87 L.Ed. 1424 (1943); and (3) to avoid unnecessary resolution of a constitutional issue that might be mooted by state court construction of a state law, *see Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941). Obviously, none of those familiar doctrines applies to this case.

diction." *Harbert,* 1997 WL 539778, *3. Where a federal district court has subject matter jurisdiction over a case, it has a "virtually unflagging obligation" to exercise that jurisdiction, even if a parallel state court action is pending. *See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986). Nonetheless, there are times when a district court should abstain from hearing a case based on principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236.

There are six factors that a federal court must weigh in deciding whether to invoke *Colorado River* abstention. In this case, most of them counsel that this Court should seriously consider abstention, for the following reasons:

1. The state court, as I have already ruled, has jurisdiction over the *res,* and this Court cannot acquire jurisdiction over it because of the *Penn General/Chesley* rule. This factor counsels strongly in favor of abstention, because there are a number of parties besides York Hunter and Avalon who are asserting claims to this *res,* and at least some of them have done so already in Supreme Court Judge John DiBlasi's court.

2. The two fora are equally convenient; Judge DiBlasi and I can see each other's courthouse from our respective chambers.

3. There is a real threat of piecemeal litigation here. Both Avalon and York–Hunter are and will continue to be parties in *American Building Supply,* as well as any other mechanic's lien proceedings, which are even now being commenced in the State Supreme Court. Like *American Building Supply,* where diversity was lacking, those proceedings possibly may not be brought in or removed to this

Court. Although there is no pending action by York Hunter seeking damages against Avalon in the state court, as there was in *Harbert,* there will be one soon enough, because I have already ruled that York Hunter will have to adjudicate its claim in foreclosure in State Supreme Court. And the question of how much money Avalon owes, and to whom, is "inextricably linked" to the underlying issues in all the pending and the anticipated foreclosure actions. This factor weighs strongly in favor of abstention. *See General Reinsurance Corp. v. Ciba–Geigy Corp.,* 853 F.2d 78, 81 (2d Cir.1988); *De Cisneros, v. Younger,* 871 F.2d 305, 308 (2d Cir.1989).[3]

Of course, it is possible to guard against at least some of the consequences of piecemeal litigation. For example, to the extent that claims for damages are asserted against York–Hunter by any other lienor in any other mechanic's lien action, the relief ordered by this Court could be fashioned to avoid double recovery. However, any difference in the pace at which the federal case and the state cases proceed could make it a tricky proposition to insure that all parties get exactly what they ought to receive, without any double recovery. And it would be extremely difficult to protect the rights of the litigants in the state court actions should the federal case reach judgment first. In the opinion of this Court, the ability to fashion relief does not sufficiently overcome the dangers of piecemeal litigation in this situation.

4. The *American Building Supply* action was the first filed, although this is too simplistic an inquiry; from the scant record before me, it appears that this action has proceeded further (though not by much). Avalon is probably correct, however, when it asserts that this Court will be able to move more quickly, particularly if the State Supreme Court is confronted

---

**3.** In its May 10 letter to the Court, Avalon suggests that the pending motion for leave to amend seeks to add a claim in foreclosure to this action. That is manifestly incorrect. York Hunter asserted a claim in foreclosure in its summons with notice on October 14,

1999 (Exh. B to Notice of Motion), and in the verified complaint it filed here (under protest) on December 17, 1999. The proposed amendment would merely attach names to the John and Jane Doe Defendants. This has been an action in foreclosure all along.

with the need to coordinate dozens of actions and a multitude of parties. Ordinarily, this factor would counsel against abstention. But the matter is not sufficiently advanced to make this consideration terribly compelling in light of my concern about the rights of the various parties in the state and federal actions vis-à-vis each other—especially since any discovery that has been obtained here can be used in the state court actions.

5. New York State law governs all claims, both at law and *in rem*. This favors abstention, although not strongly; otherwise there would be a presumption against exercising jurisdiction in diversity cases where there are parallel state lawsuits. *See De Cisneros,* 871 F.2d at 309.

6. Finally, I have every confidence that the New York State Supreme Court can fairly and satisfactorily adjudicate Avalon's common law claims against York Hunter. No party has pointed to any circumstance that would counsel against moving all proceedings to Judge DiBlasi's court. Avalon protests that there is some danger of prejudice to it as an out-of-state litigant. This particular concern was the basis on which diversity jurisdiction was inserted into the Constitution. Some people are of the opinion that the dangers of judicial prejudice against out-of-staters were overrated even in 1789. They are clearly non-existent today. Avalon came into the State of New York and the County of Westchester to develop real estate. If Avalon is secure enough to do business in Westchester County, then it should be secure enough to litigate about that business in the Westchester County Supreme Court.

Avalon argues that there is insufficient "concurrence" between the American Building Supply action and the instant action for me to abstain under *Colorado River.* Indeed, it asserts that "the issues in the actions are dramatically different," with York Hunter and Avalon suing each other for millions, while "American Building has brought a collection claim for $158,738." (May 10, 2000 Reichman letter at 3.) But the size of American Building Supply's claim is irrelevant. American Building Supply has foreclosed on its lien on the property. Under New York's Lien Law, that brings down the whole house of cards—i.e., all the other liens on the property—and requires an adjudication of who owed what to whom in connection with this particular project.

If I were not faced with the *Penn General/Chesley* problem, and I could retain jurisdiction over York Hunter's foreclosure claim, I would not worry for one second about prudential abstention. But since I cannot act on the foreclosure claim—since that issue must be decided in the State Supreme Court—I am constrained to conclude, as Judge Preska concluded in *Harbert,* that "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Harbert,* 1997 WL 539778, *5 (citation omitted). Only Judge DiBlasi can exercise jurisdiction over the *res* and all the claimants to it, by consolidating the various actions that have already been filed in his Court. Only Judge DiBlasi can determine everyone's rights without doing violence to anyone's priority. Therefore, on balance, this case, once shorn of the third cause of action, belongs in the New York State Supreme Court.

This case is dismissed in an exercise of prudential abstention, without prejudice to the right of all parties to assert their claims in the New York State Supreme Court.