**UNITED STATES of America,
Plaintiffs,**

v.

**REAL PROPERTY AND PREMISES LOCATED AT 249–20 CAMBRIA AVENUE, LITTLE NECK, NEW YORK 11362, and All Proceeds Traceable Thereto, et al., Defendants.**

No. 13–cv–6730 (ADS)(GRB).

United States District Court,
E.D. New York.

Signed May 27, 2014.

---

United States Attorneys' Office, Eastern District of New York, Attorneys for the Plaintiff, Central Islip, NY, By Robert W. Schumacher, II, Assistant United States Attorney.

Fein Such Crane LLP, Attorneys for the Defendant, JPMorgan Chase Bank, National Association Rochester, N.Y. By David P. Case, Esq., Lisa M. McQuade, Esq., Of Counsel.

Law Offices of Steven L. Kessler, Attorneys for the Claimants, Chee Kuen Yim, Chee Kuan Yim, Chee Ching Yim, Yi Rong Liu, Rui Zhu Zheng, Qiao Chen, Regina Ngan, Swee Choo Ngan, and Shu Yu Lin New York, N.Y. By Steven L. Kessler, Esq., Of Counsel.

Hodgson Russ LLP, Attorneys for the Claimant, Manufacturers and Traders

Trust Company, agent of M & T Bank New York, N.Y. By Cathy A. Fleming, Esq., Of Counsel.

The Claimant Ken Tatarow d/b/a Tatarow Family Partners Pro Se, Clearwater, FL.

## DECISION AND ORDER

SPATT, District Judge.

On December 2, 2013, the Plaintiff United States of America (the "United States") brought this civil *in rem* action to forfeit and condemn to its use and benefit (1) four New York properties, namely (a) 249–20 Cambria Avenue, Little Neck, New York 11362, (b) 42–34 189th Street, Flushing, New York 11358, (c) 61–12 213th Street, Bayside, New York 11364, and (d) 37–32 10th Street, Long Island City, New York 11101 (the Defendant "New York Properties"); (2) two Florida Properties (a) 100 Live Oaks Blvd., Casselberry, Florida 32707 and (b) West Irlo Bronson Memorial Highway, Kissimmee, Florida 34747 (the "Defendant Florida Properties"), and (3) $70,068.00 and $30,760.00 in United States Currency (the "Defendant Funds") (collectively the "Defendants *In Rem*"). According to the complaint, the Defendants *In Rem* are subject to forfeiture pursuant to: (a) 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of 18 U.S.C. § 545; and/or (b) 18 U.S.C. § 2323(a), as property used in any manner or part to commit or facilitate the commission of violations of 18 U.S.C. § 2320, and/or property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 2320.

On March 26, 2014, claimants Chee Kuen Yim, Chee Kwan Yim, Chee Ching Yim, Yi Rong Liu, Rui Zhu Zheng, Qiao Chen, Regina Ngan, Swee Choo Ngan, and Shu Yu Lin (the "Claimants") moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12 to dismiss this *in rem* civil forfeiture action for lack of subject matter jurisdiction on the ground that there is a prior pending civil forfeiture proceeding against the Defendant New York Properties in Supreme Court, Suffolk County, captioned *Spota v. Yim*, No. 13–7703 (the "State Civil Action"), and pending orders of attachment against the New York Properties in that proceeding. For the reasons set forth, the motion is denied.

## I. BACKGROUND

 In deciding a Fed. R. Civ. P. 12(b)(1) motion, the court "may refer to evidence outside the pleadings." *Id.* Notably, "[t]he standard for reviewing a [Fed. R.Civ.P.12(b)(1) ] motion to dismiss is essentially identical to the [Fed.R.Civ.P.] 12(b)(6) standard," "except that '[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Taylor v. New York State Office for People with Developmental Disabilities*, 13–cv–740 (NAM/CFH), 2014 WL 1202587, slip op. at *3 (N.D.N.Y. Mar. 14, 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000)).

### A. The State Actions

In or about December 2010, the Suffolk County District Attorney's Office, Asset Forfeiture Unit (the "SCDA") initiated an investigation involving the importation, transportation, distribution, and sale of trademark counterfeit goods in the New York Metropolitan area and elsewhere.

The SCDA identified, among others, Chee Kuen Yim ("Janice Yim"), Chee Kwan Yim ("Jimmy Yim"), Chee Ching Yim ("Steve Yim"), and Regina Ngan ("Tina Ngan") of Queens, New York, as well as Anthony Moresco ("Moresco") of Rutherford, New Jersey as main targets

(collectively the "Targets"). These persons allegedly participated in a scheme to knowingly import and sell counterfeit designer handbags, boots, jackets, pocketbooks, sunglasses, jewelry, and other merchandise (the "Trademark Counterfeit Scheme"). The Targets allegedly conspired to import this counterfeit merchandise from China, store it at facilities in Queens, New York, and then distribute it to "street sellers" throughout the New York metropolitan area, Florida, Pennsylvania, Illinois, Georgia, and California.

Beginning on or about March 15, 2013, the Targets were arraigned in New York State Court in connection with the Trademark Counterfeit Scheme, see *The People of the State of New York v. Goodies Enterprise, et al., CR–13–0670, 13–1675* (the "State Criminal Action"). Indictments were returned against the Targets, among others.

On or about May 8, 2013, New York State commenced the State Civil Action pursuant to Article 13–A of the New York Civil Practice Law and Rules ("CPLR"). The named defendants in the State Civil Action are, among others, Jimmy Yim, Janice Yim, Steve Yim, Tina Ngan, Moresco, Swee Choo Ngan, Zhou Yu Lin, Quiao Chen (the "State Civil Defendants"). In the State Civil Action, New York State seeks a judgment in the amount of $6,721,667.00 against the State Civil Defendants, jointly and severally, as the proceeds of the criminal activity.

### 1. *The Defendant New York Properties*

On March 13 and 14, 2013, in the State Civil Action, New York State obtained two *ex parte* orders of attachments pursuant to CPLR § 1317 (the "Attachment Orders") which, among other things, restrained "all property of, or debts owing to the [State Civil D]efendants [there]in for the sum of $6,721,667.00, as the proceeds, substituted proceeds and/or instrumentalities of defendants' criminal conduct." Included in the properties which could be levied under the order of attachment were the Defendant New York Properties. In other words, the attachment orders prohibited the State Civil Defendants from further encumbering the Defendant New York Properties.

Pursuant to Section 1322 of the CPLR, agents from the SCDA's Office levied upon the Defendant New York Properties by filing a notice of attachment with the local county clerk. At that time, also pursuant to CPLR Section 1322, the county clerk recorded and indexed the notice of attachment in the same manner and with the same effect as a notice of the pendency of an action.

The Claimants opposed the SCDA's motion to confirm the *ex parte* attachments. On February 11, 2014, Supreme Court, Suffolk County, confirmed the attachments. A motion for reconsideration of that order is currently pending before the Supreme Court.

### 2. *The Defendant Florida Properties*

New York State has not taken any action against the Florida Properties in connection with the State Civil Action. Specifically, no filing has been made in an attempt to encumber or levy any real property in Florida, nor is there a final order in the State Civil Action that can be filed in Florida.

### 3. *The Defendant Funds*

On March 14, 2013, law enforcement executed a search warrant at the Cambria Avenue property and seized approximately seventy thousand sixty-eight dollars and zero cents ($70,068.00) in United States currency believed to be proceeds of the illegal trademark counterfeit scheme. Law enforcement also executed a separate

search warrant at the Chase Bank in Flushing, New York on Swee Choo Ngan's safe deposit box and seized approximately thirty thousand seven hundred and sixty dollars and zero cents ($30,760.00) in United States currency believed to be proceeds of the illegal trademark counterfeit scheme.

On April 24, 2013, this approximate $101,000.00 in seized cash was turned over to the United States Department of Homeland Security, and subjected to federal forfeiture, pursuant to a Turnover Order entered by the Supreme Court, Suffolk County. In each Turnover Order, New York State confirmed that "there is no state civil forfeiture action in rem pending against [the Defendant Funds], nor does the District Attorney intend to commence such an action against such property."

B. *The Present Action*

As noted above, on December 2, 2013, the United States commenced this civil *in rem* action seeking the forfeiture of the Defendants *In Rem* for the United States' use and benefit. Thereafter, the Claimants separately filed claims pursuant to Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims.

On March 26, 2014, the Claimants filed this motion to dismiss the complaint for lack of subject matter jurisdiction. Relying on *Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935), the Claimants argue that the commencement of the State Civil Action pursuant to Article 13–A of the CPLR constitutes a sufficient exercise of *in rem* jurisdiction over the properties sought to be forfeited so as to bar a subsequent federal *in rem* civil forfeiture proceeding against the same property. Alternatively, the Claimants argue that by issuing the Attachment Orders, the Supreme Court,

Suffolk County secured *in rem* jurisdiction over the properties sought to be forfeited here. The United States opposes the Claimants' motion to dismiss.

## II. DISCUSSION

■ "A common-law rule of long standing prohibits a court, whether state or federal, from assuming *in rem* jurisdiction over a *res* that is already under the *in rem* jurisdiction of another court.'" *Chesley v. Union Carbide Corp.,* 927 F.2d 60, 66 (2d Cir.1991), quoting *United States v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1145 (9th Cir.1989) (collecting cases). This common law rule was developed to maintain comity between courts. As the Ninth Circuit observed in *One 1985 Cadillac Seville,* "such harmony is especially compromised by state and federal judicial systems attempting to assert concurrent control over the *res* upon which jurisdiction of each depends." 866 F.2d at 1145

■ "The rule against concurrent *in rem* proceedings is a prudential limitation on the exercise of federal jurisdiction, rather than a constitutional limitation upon jurisdiction." *York Hunter Const., Inc. v. Avalon Properties, Inc.,* 104 F.Supp.2d 211, 214 (S.D.N.Y.2000). However, as the Ninth Circuit has noted, "This does not mean, however, that the matter is within the discretion of the district court. The language of *Penn General* indicates that a federal court *must* yield to a prior state proceeding." 866 F.2d at 1145. Or, as the United States Supreme Court originally put the matter, "[t]he jurisdiction of one court must of necessity yield to the other." *Penn General,* 294 U.S. at 195, 55 S.Ct. at 389. Thus, "[a]s a matter of comity and practicality, the court that first acquires jurisdiction over the *res* is the court that acts." *York Hunter,* 104 F.Supp.2d at 214.

In *Penn General,* it was impossible for both courts simultaneously to assert jurisdiction over the same *res* because the successful exercise of jurisdiction by each required the exclusion of the other. Indeed, in that case:

> The *res* was an insolvent insurance company and the purpose of each of the two purported exercises of jurisdiction was to assert exclusive control over the management of the company's assets. The gist of the two competing orders was to oust the other from control of the *res* so that the court's receiver could exercise total control over the salvage efforts. The Supreme Court's opinion recognized the fundamental incompatibility of dual exercise of jurisdiction and ruled that the first exercise would be exclusive.

*United States v. $3,000,000 Obligation of Qatar Nat. Bank to Nomikos,* 810 F.Supp. 116, 118 (S.D.N.Y.1993).

■■■ The "corollary" of the rule preventing simultaneous *in rem* actions is that where one action is *in personam* and one *in rem,* both cases may proceed simultaneously. *United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 44 (1st Cir.1991). Indeed, "the jurisdictional boundaries between federal and state courts in the forfeiture context turn on whether and when a particular court exercised *in rem* or *in personam* jurisdiction." *City of Concord v. Robinson,* 914 F.Supp.2d 696, 709 (M.D.N.C.2012). This distinction makes sense because "the effect of filing [an] in rem action in federal court 'is to draw to the federal court the possession or control, actual or potential, of the res,' and a state court's exercise of jurisdiction 'necessarily impairs, and may defeat,' the federal court's jurisdiction. In contrast, an *in personam* action involves a controversy over liability rather than over possession of a thing." *Ret. Sys. of Ala. v. J.P. Morgan*

*Chase & Co.,* 386 F.3d 419, 426 (2d Cir.2004)(internal citation omitted).

■■■ This case presents a question of first impression—namely, whether a New York State civil action commenced pursuant to Article 13–A of the CPLR amounts to a jurisdictional bar to a later-commenced civil *in rem* action in federal court. The answer turns on whether the State Civil Action commenced under Article 13–A of the CPLR is *in personam, in rem,* or *quasi in rem.*

■■■ In interpreting statutory provisions such as Article 13–A, a court should attempt to effectuate the intent of the Legislature. *See Matter of New York County Lawyers' Assn. v. Bloomberg,* 19 N.Y.3d 712, 721, 955 N.Y.S.2d 835, 979 N.E.2d 1162 (2012); *Patrolmen's Benevolent Assn. of City of N.Y. v. City of New York,* 41 N.Y.2d 205, 208, 391 N.Y.S.2d 544, 359 N.E.2d 1338 (1976). To that end, the court must first look to the statutory text. *See Matter of New York County Lawyers' Assn.,* 19 N.Y.3d at 721, 955 N.Y.S.2d 835, 979 N.E.2d 1162; *Majewski v. Broadalbin–Perth Cent. School Dist.,* 91 N.Y.2d 577, 583, 673 N.Y.S.2d 966, 696 N.E.2d 978 (1998). Where the language of a statute is clear and unambiguous, the court must give effect to its plain meaning. *See Kramer v. Phoenix Life Ins. Co.,* 15 N.Y.3d 539, 550, 914 N.Y.S.2d 709, 940 N.E.2d 535 (2010); *Matter of Crucible Materials Corp. v. New York Power Auth.,* 13 N.Y.3d 223, 229, 889 N.Y.S.2d 517, 918 N.E.2d 107 (2009). Moreover, a statute must be construed as a whole, with all parts read and construed together. *See New York State Psychiatric Assn., Inc. v. New York State Dept. of Health,* 19 N.Y.3d 17, 23–24, 945 N.Y.S.2d 191, 968 N.E.2d 428 (2012).

In this case, the State Civil Action was brought pursuant to Article 13–A of the CPLR, which provides, in pertinent part,

that "[a]ny action under [Article 13–A] ... shall be civil, remedial, and *in personam* in nature ..." In enacting this provision, "[t]he New York State Legislature was unequivocal in its designation of the CPLR Article 13–A Civil Forfeiture Act as being *In Personam* in nature." *Dist. Attorney of Queens Cnty. v. McAuliffe*, 129 Misc.2d 416, 424, 493 N.Y.S.2d 406, 412 (Sup.Ct. 1985). Indeed, *nothing contained in the complaint in the State Civil Action asks the state court to exercise jurisdiction in rem over the Defendant New York Properties.* Therefore, this federal civil *in rem* action may proceed simultaneously with the prior-filed *in personam* State Civil Action.

The Claimants ask this Court to examine the statute's legislative history to conclude that the State Civil Action is, in fact, an *in rem* or *quasi in rem* proceeding. To be sure, there is extratextual support for the proposition that, in enacting Article 13–A, some New York State assemblyman contemplated a *quasi in rem* proceeding. *See e.g.,* Letter from Ass't Att'y Gen. Allee to New York Attorney General's Office, dated June 24, 1983, at 1 (the bill "appears to be a hybrid in rem/in personam" forfeiture statute), reprinted in S. Kessler, New York Criminal and Civil Forfeitures, § App 4.01, at App 4–5 (LexisNexis 2013); Letter from Dist. Att'y Robert M. Morgenthau to Sen. Padavan, dated July 12, 1983, at 2 (noting that "the unique in personam aspects of this bill were intended to provide law enforcement authorities substantial flexibility in located assets which could be subject to forfeiture" but asserting that the in rem/in personam "hybrid" elements of the bill could pose enforcement risks), reprinted in S. Kessler, New York Civil and Criminal Forfeitures, § App 4.01, at App 4–10; Memorandum from Anthony J. Girese to Members of the Legislative Committee, dated July 6, 1983, at 1 (noting the "curiously hybrid in rem/in personam structure" of the statute), re-

printed in S. Kessler, New York Civil and Criminal.

However, where, as here, the explicit language of the text is clear and unambiguous, the court must give effect to its plain meaning. *See Matter of Estate of Devine,* 126 A.D.2d 491, 493, 511 N.Y.S.2d 231 (1st Dep't 1987)("Where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used") (citation omitted). It is not for the courts to "correct supposed errors, omissions or defects in legislation." *Meltzer v. Koenigsberg,* 302 N.Y. 523, 525, 99 N.E.2d 679 (1951).

Here, as noted above, Article 13–A by its terms makes clear that it is an *in personam,* rather than *in rem,* statute. By contrast, there exists in New York State both civil and criminal *in rem* forfeiture statutes. *See e.g.* N.Y. Pub. Health Law § 3388 (McKinney 2014); N.Y. Penal Law § 480.05 (McKinney 2014); N.Y. Penal Law § 410.00 (McKinney 2014); N.Y. Penal Law § 415.00.

The fact that the Supreme Court, Suffolk County issued the Attachment Orders, which encompassed the New York Properties, does not thereby convert the State Civil Action into an *in rem* action. An order of attachment under CPLR § 1317 is merely a provisional remedy used to enforce monetary judgments under Article 13–A. In particular, the Attachment Orders only prohibit the State Civil Defendants from further encumbering the New York Properties so as to protect the State's interest in their equity, which may be used to potentially satisfy a judgment in the State Civil Action.

In this regard, the concerns about comity expressed by the Supreme Court of the United States in *Penn General* and its progeny are not present here. Stated otherwise, the steps taken by New York State in the State Civil Action do not conflict with any potential order of forfeiture by

this Court. If the Defendant New York Properties are forfeited to the United States, the United States would take ownership and possession of the properties, subject to any mortgages, liens, or encumbrances thereon. If New York State is subsequently granted a judgment against the State Civil Defendants, and chooses to satisfy all or part of that judgment with equity contained in the Defendant New York properties, it would do so against the United States, who would pay the state as a judgment creditor, along with other judgment creditors/mortgage holders.

In the Court's view, "[p]roceeding in this fashion would entail no interference with the state court's exercise of its jurisdiction, and no discourtesy to the state court, nor insensitivity to considerations of comity." *$3,000,000 Obligation of Qatar Nat. Bank to Nomikos,* 810 F.Supp. at 118–19.

The Claimants also contend that this proceeding is invalid because the Supreme Court, Suffolk County has not issued a turnover order and the United States has failed to comply with the notice provisions of the federal forfeiture laws. The Court finds this argument unavailing because the Claimants ignore the applicable section of that statute, which states that where "the property is seized by a State or local law enforcement agency and turned over to a Federal law enforcement agency for the purpose of forfeiture under Federal law, notice shall be sent not more than 90 days after the date of seizure by the State or local law enforcement agency." 18 U.S.C. § 983(a)(1)(A)(iv).

However, here, no real property was ever "seized" by New York State. The real property at issue remains in the possession of the current owner, the applicable State Civil Defendants, who, in fact, continue to occupy and/or rent and collect income therefrom.

Having determined that the Supreme Court, Suffolk County has not exercised *in*

*rem* jurisdiction over the Defendant New York Properties in the State Civil Action, the Court turns to the Defendant Florida Properties which, the Court finds, remain subject to federal forfeiture. While New York State filed a notice of attachment regarding the Defendant New York Properties, it has taken no action against any Florida property in connection with the State Civil Action. Specifically, no filing has been made in an attempt to encumber or levy any real property in Florida, nor is there is a final order in the State Civil Action that can be filed in Florida. Put another way, there has been no exercise of New York State jurisdiction over the Defendant Florida Property and, therefore, they are subject to federal forfeiture.

Similarly, the Claimants offer no credible legal justification for this Court to decline to exercise jurisdiction over the Defendant Funds.

In sum, the Court denies the Claimants' motion to dismiss for lack of subject matter jurisdiction.

**SO ORDERED.**