OPINION OF THE COURT
Anil C. Singh, J.
At issue in this CPLR article 78 proceeding is whether respondent City of New York may assign conflict cases to institutional providers such as the Legal Aid Society without the consent of petitioner county bar associations pursuant to article 18-B, § 722 of the County Law.
Article 18-B of the County Law was promulgated in response to the United States Supreme Court’s seminal decision in Gideon v Wainwright (372 US 335 [1963]) that an indigent defendant has the right to the assistance of appointed counsel in a state criminal prosecution.
Section 722 requires the governing body of a county or city to implement a plan for providing counsel to persons charged with a crime who are financially unable to obtain counsel. The plan must conform to one of the following four options:
One, representation by a public defender;
Two, representation by counsel furnished by a private legal aid bureau or society designated by the county or city as organized and operating to give legal assistance and representation to indigent criminal defendants;
Three, representation by counsel furnished pursuant to a plan of a bar association through a panel of rotating lawyers or by an office of conflict defender; or
Four, representation according to a plan containing a combination of any of the above options.
In the event the city or county does not have a plan that conforms with option three or four and the court finds that a *924 conflict of interest prevents the assignment of counsel pursuant to the plan in operation, the court may assign an attorney who will receive compensation pursuant to article 18-B.
In 1965, the Mayor of the City of New York, by Executive Order No. 178, designated the Legal Aid Society of the City of New York as the primary institutional provider of counsel to indigent criminal defendants. The order provided further that where a conflict of interest existed or, for other appropriate reasons, the Legal Aid Society declined representation, the defendant was to be represented in accordance with a joint plan of the Association of the Bar of the City of New York and the New York County Lawyers’ Association. Under the bar plan, a panel of private lawyers provided representation and were compensated in accordance with sections 722-b and 722-c of the County Law.
The plan adopted by the City has evolved over the decades. Currently, seven organizations provide trial-level indigent criminal defense representation in all five counties in New York City. The organizations are the Legal Aid Society; Battiste, Aronowsky & Suchow, Inc., doing business as Staten Island Legal Services; the Bronx Defenders; Brooklyn Defender Services; New York County Defender Services; Neighborhood Defender Services; and Queens Law Associates. These providers fall within the definition of section 722 (2) — namely, a private legal aid bureau or society operating to give legal assistance to indigent criminal defendants.
On January 6, 2010, the City of New York adopted a rule — 43 RCNY chapter 13, the “Indigent Defense Plan for the City of New York” — which provides for the continuation of assigned counsel panels, the panels of private attorneys appointed by the Appellate Divisions of the First and Second Departments. Additionally, the rule creates the Office of the Assigned Counsel Plan. Chapter 13 provides that “[t]he Office of the Assigned Counsel Plan (the ‘OACP’), established pursuant to subdivision (3) of section 722 of the County Law, is responsible for management of the City’s Criminal Defense Panels” (43 RCNY 13-01).
Section 13-01 defines “providers” as private institutional legal services organizations selected by the Criminal Justice Coordinator in accordance with a competitive procurement process. The providers selected through the procurement process, along with attorneys appointed for assigned counsel panels, will provide indigent criminal legal services.
Additionally, chapter 13 establishes a procedure for the payment of vouchers to 18-B attorneys. The vouchers in the first *925 instance are to be signed by the judge who presided over the matter and are then to be submitted to the Office of the Assigned Counsel Plan “for review prior to payment by the comptroller” (43 RCNY 13-06).
In accordance with chapter 13, the City issued a request for proposals dated February 3, 2010 (City of New York, Mayor’s Office of the Criminal Justice Coordinator, Request for Proposals: Indigent Criminal Defense Services [RFP]). The RFP notes that seven organizations currently provide trial-level services in New York City. The City expects to award at least one more contract in each county. Additionally, the RFP states that
“the City is interested in providing representation in conflict cases and anticipates issuing awards to vendors who propose to provide representation in conflict cases. The term conflict cases refers to cases in which the provider at arraignment has a conflict of interest and is thereby barred from representing the defendant” (RFP at 3).
Subsequently, the City issued two addendums. The first, dated February 8, 2010, states: “There will be at least 2 institutional providers in each county who will provide both primary and conflict representation” (RFR first addendum, at 1). The second addendum, dated March 2, 2010, states that the City’s plan for indigent legal services conforms to subdivision two of section 722 of the County Law (RFR second addendum, at 5).
On March 2, 2010, the City issued Executive Order No. 132, repealing Executive Order No. 178 of 1965. This order, consistent with chapter 13, provides that the criminal defense panels created under the 1965 order continue to exist and be administered in accordance with the rules of the Appellate Division, First and Second Departments. However, the order also states that the assigned counsel plans are administered by the Office of the Mayor, Office of the Assigned Counsel Plan. Providers will be selected through a competitive procurement process. These providers — along with the assigned counsel panels of the First and Second Departments — will deliver indigent legal services. Additionally, “[i]n any case where, due to conflict of interest or other appropriate reason, Providers decline or are unable to represent an indigent person at the trial or on appeal in a criminal matter, counsel shall be furnished by attorneys assigned by the AGP [Assigned Counsel Plan]” from the criminal defense panels of the Appellate Division, or by alternative providers selected by the City through its procurement process (at 2-3).
*926 Thereafter, on July 13, 2010, the City issued Executive Order No. 136, which repealed Executive Order No. 132 of 2010 and Executive Order No. 178 of 1965,
“except that the Criminal Defense Panels created under the authority of Executive Order 178 of 1965 and pursuant to the plan submitted by bar associations in accordance with subdivision 3 of section 722 of the County Law shall continue to exist and shall be administered in accordance with the rules of the Appellate Division, First and Second Departments.”
Petitioners commenced this article 78 proceeding on June 2, 2010, on the ground that the attempt by the City in the RFP and Executive Order No. 136 to assign conflict cases to institutional providers without agreement by the county bars violates section 11 of the Municipal Home Rule Law, article 18-B and the 1965 Bar Plan.[1]
Petitioners contend that the City has wrongfully attempted to increase mayoral control over the providing and funding of indigent defense services. This attempt is unlawful for four reasons. First, article 18-B requires the county bars’ agreement with the implementation of a plan that addresses the assignment of conflict cases. The process violates article 18-B as it excludes the county bars from devising a plan for assigned counsel cases. Under section 722 (3) of the County Law, the county bars are given that responsibility, whether it is carried out by private attorney panels, an office of conflict defender or institutional providers.
Second, portions of the 1965 Bar Plan are retained while other sections are abandoned. The county bars did not approve the adoption of portions of the plan.
Third, the City of New York failed to make a designation as required by the 1965 Bar Plan.
Fourth, under chapter 13, the Indigent Defense Plan, the City of New York has usurped authority to review compensation of 18-B attorneys, which is the sole province of the judiciary.
The City of New York opposed the petition and has moved for summary judgment. Thereafter, the Legal Aid Society moved to intervene as respondent and joined in the City’s motion for *927 summary judgment. The Legal Aid Society’s motion to intervene is granted without opposition.
The City moves for summary judgment arguing that this article 78 proceeding is barred by the four-month statute of limitations. Chapter 13 was promulgated on January 6, 2010. The proceeding was commenced on June 2, 2010, wídch is outside the four-month time period.
As acknowledged by the City, chapter 13 was promulgated pursuant to the New York City Administrative Procedure Act (NY City Charter ch 45 [CAPA]). Pursuant to section 1043 (e) (1) (c) of CAPA, a rule does not become effective until “the rule and a statement of basis and purpose have been published in the City Record and thirty days have elapsed after such publication.” A rule may be implemented earlier based on a “finding that a substantial need for the earlier implementation of a program or policy has been made by the agency in writing and has been approved by the mayor prior to the effective date of the rule.” (Id.)
Here, the City did not seek early implementation of chapter 13. Accordingly, chapter 13 became effective on February 5, 2010. This article 78 proceeding was timely commenced on June 2, 2010. Furthermore, the City issued Executive Order No. 132 and the second addendum to the RFP on March 2, 2010. This article 78 proceeding was commenced within four months of steps taken by the City to implement its criminal indigent plan through the issuance of the RFP and Executive Order Nos. 132 and 136.
Next, the City urges that the petitioners lack standing to challenge chapter 13. Petitioners have suffered no harm, nor are they within the zone of interest the statute seeks to protect. This argument ignores the historical role that the county bar associations — especially the New York County Lawyers’ Association — have played in the implementation and administration of the assigned counsel panels. This role was established by statute, adopted by executive order and continued since 1965 to the present. Additionally, members of the various bar associations are members of the assigned counsel plans.
The county bar associations have an interest to ensure compliance with article 18-B. If petitioners are correct that they have the sole right to implement, supervise and modify a bar plan providing for conflict defense, the county bars have been injured by the City’s attempt to assign cases to institutional providers. Section 722 was promulgated to provide effective assistance to *928 indigent criminal defendants. The injuries sustained by the county bars are within the zone of interest of the statute in that these institutions seek to ensure that the City meets its statutory obligation and adopts a plan for providing assistance of counsel to indigent defendants.[2]
Nor are the seven institutional providers necessary parties to this litigation. Complete relief can be granted here between the parties. The county bars seek to enforce their statutory rights under section 722 (3) to insure that conflict counsel are selected in accordance with a bar plan. While the institutional providers have an interest in the outcome, existing contractual rights are not being taken away from them. Moreover, the Legal Aid Society has intervened. A number of the other institutional providers have submitted an amicus curiae brief in support of the City’s cross motion for summary judgment and could have chosen instead to intervene in this proceeding.
The core of petitioners’ challenge to the City’s attempt to assign conflict cases to institutional providers without their consent is based on an amendment to section 722 (3) made by the State Legislature during the pendency of this proceeding. Section 722 (3), as amended (L 2010, ch 56), provides as follows:
“Representation by counsel furnished pursuant to either or both of the following: a plan of a bar association in each county or the city in which a county is wholly contained whereby: (i) the services of private counsel are rotated and coordinated by an administrator, and such administrator may be compensated for such service; or (ii) such representation is provided by an office of conflict defender” (emphasis added).
Petitioners argue that the statute was amended to ensure that conflict cases will be provided only by a bar plan. Under the statutory scheme, conflict cases are addressed only in section 722 (3) and (4). Therefore, the county bars have the exclusive role in providing conflict counsel, either through private lawyers or an office of conflict counsel. In the event that there is no bar plan, article 18-B mandates that conflict counsel *929 must be appointed by the court pursuant to section 722 (4) and (5) of the County Law. Petitioners urge that the City does not have the power to assign conflict cases. Had the Legislature intended to give the City this authority, section 722 would have explicitly given the City the right to assign conflict cases.
This court’s role in interpreting the statute “is to discern and implement the will of the Legislature and attempt — by reasonable construction — to reconcile and give effect to all of the provisions of the subject legislation” (Carney v Philippone, 1 NY3d 333, 339 [2004]). “In determining a statute’s intent, we resort to standard rules of statutory construction, which have been well established” (Columbus 95th St., LLC v New York State Div. of Hous. & Community Renewal, 81 AD3d 269, 277 [1st Dept 2010]).
A fundamental rule of statutory construction is that, where the language is clear, the court should look to the plain meaning of the statute without relying on other means of interpretation (McKinney’s Cons Laws of NY, Book 1, Statutes § 76). The intent of the Legislature is ascertained through a literal reading of the act if there is no ambiguity in the words (Statutes § 92 [b]). Words and phrases used in a statute should be given their ordinary meaning when the Legislature has given no indication that a different meaning was intended (People v Cruz, 48 NY2d 419 [1979]). Likewise, “[i]t is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other” (People v Mobil Oil Corp., 48 NY2d 192, 199 [1979], citing McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98, 130). All parts of a statute are to be harmonized, giving effect and meaning to all provisions (Statutes § 98).
In enacting section 722 of the County Law, the Legislature unambiguously empowered “the governing body of each county [to] place in operation ... a plan for providing counsel to persons charged with a crime . . . who are financially unable to obtain counsel.” Section 722 gives the City the discretion to determine how the plan is formulated, provided that it complies with the following alternatives: (1) representation by a public defender; (2) representation by counsel furnished by a private legal aid bureau or society; (3) representation by counsel furnished pursuant to a plan of a bar association; or (4) representation according to a plan containing a combination of any of the above three options.
*930 A “plan” is defined as “an orderly arrangement of parts in terms of an overall design or objective” (Webster’s Third New International Dictionary [2002]). The parts of a plan to provide representation to indigent defendants charged with a crime would necessarily include the assignment of conflict cases. Construed as a whole, section 722 gives the City the statutory authority to implement a plan which includes the right to assign conflict cases that is consistent with the four statutory alternatives.
Petitioners’ reading of section 722 (3) as giving the county bars the exclusive role to provide conflict counsel renders meaningless the choice given to the City under section 722 (4): “Representation according to a plan containing a combination of any of the foregoing.” If petitioners’ interpretation were correct, the City would not have the option to make a choice but, instead, would be required to select the bar plan. It would not be permissible to make a plan that combines the alternative options provided in section 722. Petitioners’ interpretation fails to give meaning and effect to all provisions of section 722.
While conflict cases are addressed only in section 722 (3) and (4), section 722 (2) allows the City to choose a plan where representation is furnished by a private legal aid bureau or society. Section 722 (2) does not distinguish between conflict and non-conflict cases. As noted above, a plan of representation would include both conflict and nonconflict cases. In short, a plain reading of the statute supports the City’s position that, pursuant to section 722 (4), it may choose a plan where representation is furnished by a private legal aid bureau or society under section 722 (2) and a bar plan under section 722 (3).
Furthermore, since the City has opted for a combination plan under section 722 (2) and (3), the court does not assign conflict counsel under section 722 (4).
Goehler v Cortland County (70 AD3d 57 [3d Dept 2009]), which is cited by petitioners, is not to the contrary. In Goehler, the County of Cortland replaced a bar plan for conflict cases and promulgated a local law which created an office of conflict counsel. The defendant implemented a procedure whereby a public defender conflict attorney was appointed by the County Legislature. The Appellate Division affirmed the Supreme Court’s decision invalidating the local law on the ground that it violated section 722 and the Municipal Home Rule Law. The Court held that “a conflict attorney appointed by the County Legislature is not authorized by section 722, which mandates *931 that a county enact a plan for providing counsel to indigent litigants that ‘shall conform’ to one of four options” set forth in County Law § 722 (1) through (4) (Goehler, 70 AD3d at 60).
Petitioners maintain that section 722 (3) was amended in response to Goehler, giving the county bars the exclusive right to assign conflict cases only through a bar plan by rotating private attorneys or an office of conflict defender.
This court disagrees. Unlike Cortland County, which created an office of conflict attorney appointed by the County Legislature, the City seeks to assign conflict cases to institutional providers under section 722 (2). The June 2010 amendment to section 722 (3), permitting “an office of conflict defender,” does not change how the City may implement its plan for representation of indigent defendants. It simply adds one more option regarding how representation for indigent defendants may be provided.
The plan formulated by chapter 13 recognizes the institutional changes in the manner legal services have been delivered to indigent defendants since 1965, when the Legal Aid Society was designated as the sole provider of these services with private attorneys handling conflict cases. Additional institutional providers have been incorporated into the plan, allowing for both institutional providers and private attorneys to handle conflict cases. Where a conflict of interest is present with one institutional provider, the case can be assigned readily to a second institutional provider or a private attorney from the bar panel.
While chapter 13 has retained portions of the 1965 Bar Plan and the county bars have not approved adoption of portions of the plan, the City under section 722 has the discretion to implement the plan without approval by the county bars.
Next, petitioners maintain that the City intends to make the Legal Aid Society a de facto office of conflict defender, which would violate section 722. It is premature to consider this argument, for contracts are yet to be awarded to any institutional provider. Furthermore, under chapter 13, counsel — including conflict counsel — will be selected from private legal services organizations pursuant to section 722 (2) and/or the bar panels under 722 (3). Therefore, on its face, the rule does not create a de facto office of conflict counsel. Rather, it assigns the work under two permissible statutory options.
Petitioners point out correctly that the executive orders and the RFP fail to designate that the providers selected through *932 the bidding process shall be “organized and operating to give legal assistance and representation to persons charged with a crime,” private legal aid bureaus or societies as defined in section 722 (2). While it is possible for the City to select providers that do not meet the statutory criteria, which may include entities set up as commercial enterprises, the City acknowledges the statutory requirement and states that contracts will be provided only to institutional providers who are organized and operating pursuant to section 722 (2). The challenge to the RFP is premature, as a final determination as to how the conflict cases will be assigned has not been made.
As noted above, the section 13-06 procedure for the payment of vouchers to 18-B attorneys provides that vouchers are to be signed in the first instance by the judge who presided over the matter and are then to be submitted to the Office of the Assigned Counsel Plan “for review prior to payment by the comptroller.”
The City maintains that chapter 13 does not grant it the right to review payment of vouchers. The court shall continue approving payment. However, the City seeks only to monitor for fraud and abuse.
This court disagrees. Sections 722-b and 722-c of the County Law require the court to approve payment. The City seeks to usurp the court’s discretion under the statute to fix reasonable compensation for services rendered by 18-B attorneys by requiring submission of vouchers to the Office of the Assigned Counsel Plan for review prior to payment. The City’s goal of rooting out fraud and abuse is laudable. However, section 13-06 places no limitation and fails to set any criteria that the Office of the Assigned Counsel Plan will employ to review vouchers that have been approved already by the court. The City does not have the statutory authority to review compensation awarded by the court to 18-B counsel.
For these reasons, the petitioners’ article 78 petition is granted only to the extent of finding that section 13-06 violates sections 722-b and 722-c of the County Law and the Municipal Home Rule Law. Accordingly, petitioners’ request for injunctive relief is granted only to the extent that the City is permanently enjoined from reviewing vouchers pursuant to section 13-06. However, this injunction does not preclude the City from auditing vouchers before payment by the Comptroller to detect fraud and abuse.
In all other respects, the petition is dismissed with prejudice.
*933 This court holds that the City is authorized to assign counsel in conflict cases to institutional providers under section 722 (2) of the County Law. The Indigent Defense Plan for the City of New York is implemented pursuant to section 722 (4), which permits the delivery of legal services to indigent defendants charged with a crime through a plan that is a combination of a private legal aid bureau or society and a bar plan. Respondents are granted summary judgment dismissing the petitions, except to the extent indicated above.
The court recognizes that the City’s current plan may cause substantial hardship to private 18-B attorneys. The economic hardship must be balanced against the City’s statutory right to implement a plan that provides adequate representation to indigent defendants charged with a crime. Whether the plan as implemented by the City will meet constitutional standards is yet to unfold.

. A separate action challenging the constitutionality of the plan was commenced in federal court. In the latter action, petitioners have raised separate and independent claims that the City has violated the right to adequate counsel, equal protection, due process and separation of powers.

. The branch of the City’s motion for summary judgment seeking to dismiss New York Criminal Bar Association, Inc. and Anastasios Sarikas on the ground that they lack standing is denied for the reasons stated in this court’s order dated October 19, 2010, which permitted these parties to intervene in the proceeding over the City’s opposition.