[979 NE2d 1162, 955 NYS2d 835]

In the Matter of THE NEW YORK COUNTY LAWYERS' ASSOCIATION et al., Appellants, and THE NEW YORK CRIMINAL BAR ASSOCIATION, INC., et al., Intervenors-Appellants, v MICHAEL R. BLOOMBERG, as Mayor of the City of New York, et al., Respondents, and THE LEGAL AID SOCIETY OF NEW YORK, Intervenor-Respondent.

Argued September 5, 2012; decided October 30, 2012

**POINTS OF COUNSEL**

*Haynes and Boone, LLP*, New York City (*Jonathan D. Pressment* and *David M. Siegal* of counsel), for appellants. I. The appeal warrants de novo review. (*Jones v Bill*, 10 NY3d 550; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Matter of Guido v New York State Teachers' Retirement Sys.*, 94 NY2d 64; *Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428; *Roberts v Tishman Speyer Props., L.P.*, 62 AD3d 71; *Pultz v Economakis*, 10 NY3d 542; *State of New York v Patricia II.*, 6 NY3d 160; *Di Marco v Hudson Val. Blood Servs.*, 147 AD2d 156; *Meltzer v Koenigsberg*, 302 NY 523; *People v Mobil Oil Corp.*, 48 NY2d 192.) II. The Appellate Division, First Department's order should be reversed. (*People v Tempton*, 192 AD2d 369; *Klostermann v Cuomo*, 61 NY2d 525; *Matter of Legal Aid Socy. of Sullivan County v Scheinman*, 53 NY2d 12; *Matter of Brusco v Braun*, 84 NY2d 674; *Goehler v Cortland County*, 70 AD3d 57; *People v Ward*, 199 AD2d 683; *Levenson v Lippman*, 4 NY3d 280; *Matter of Met Council v Crosson*, 84 NY2d 328; *Matter of Parry v County of Onondaga*, 51 AD3d 1385; *Matter of Stream v Beisheim*, 34 AD2d 329.)

*Satterlee Stephens Burke & Burke LLP*, New York City

(*Zoë E. Jasper* and *Alun W. Griffiths* of counsel), for intervenors-appellants. I. The appeal herein warrants de novo review. (*Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Matter of Guido v New York State Teachers' Retirement Sys.*, 94 NY2d 64; *Jones v Bill*, 10 NY3d 550.) II. The City of New York's proposed plan is unlawful under County Law § 722. (*Goehler v Cortland County*, 70 AD3d 57; *Matter of Branford House v Michetti*, 81 NY2d 681; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428; *Frank v Meadowlakes Dev. Corp.*, 6 NY3d 687; *United States v Hudson*, 7 Cranch [11 US] 32; *Department of Welfare of City of N.Y. v Siebel*, 6 NY2d 536; *Matter of McNerney v City of Geneva*, 290 NY 505; *People v Cristin*, 30 Misc 3d 383; *People v McLaughlin*, 174 Misc 2d 181.) III. The City of New York's failure to obtain bar association approval invalidates the City's proposed plan.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Julian L. Kalkstein, Larry A. Sonnenshein* and *Thaddeus Hackworth* of counsel), for respondents. I. Petitioners' challenge to 43 RCNY chapter 13 is barred by the statute of limitations. (*New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194; *Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540; *Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30; *Ousmane v City of New York*, 7 Misc 3d 1016[A], 2005 NY Slip Op 50634[U]; *Association of Messenger Servs. v City of New York*, 136 Misc 2d 869; *Matter of Edmead v McGuire*, 67 NY2d 714; *Matter of Queensborough Community Coll. of City Univ. of N.Y. v State Human Rights Appeal Bd.*, 41 NY2d 926; *Matter of Allstate Ins. Co. v Stewart*, 36 AD2d 811, 29 NY2d 925; *Matter of GFI-Genfare, Div. of Gen. Signal Tech. Corp. v New York City Tr. Auth.*, 184 AD2d 334.) II. County Law § 722 authorizes the City of New York to promulgate a plan for the provision of counsel for indigent defendants that includes utilizing institutional providers under section 722 (2) for assignment of counsel in conflict cases. (*Carney v Philippone*, 1 NY3d 333; *Frank v Meadowlakes Dev. Corp.*, 6 NY3d 687; *People ex rel. Huntington v Crennan*, 141 NY 239; *Goehler v Cortland County*, 70 AD3d 57; *Gideon v Wainwright*, 372 US 335; *People v Finnegan*, 85 NY2d 53, 516 US 919; *Zappone v Home Ins. Co.*, 55 NY2d 131.)

*Davis Polk & Wardwell LLP*, New York City (*Daniel F. Kolb, Lara M. Samet* and *Nicholas P. Stabile* of counsel), and *Steven Banks, Legal Aid Society*, for intervenor-respondent. I. The

Appellate Division correctly ruled that the City of New York's actions were consistent with section 722 of the County Law and that appellants may not interfere with the City's discretion to assign cases. (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428; *Matter of Comptroller of City of N.Y. v Mayor of City of N.Y.*, 7 NY3d 256; *Hurrell-Harring v State of New York*, 15 NY3d 8; *Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y.*, 7 NY3d 451; *Riley v County of Broome*, 95 NY2d 455; *Riverton Assoc. v Harvey*, 1 Misc 3d 822; *People v Mills*, 11 NY3d 527; *Matter of Niagara Mohawk Power Corp. v Public Serv. Commn. of State of N.Y.*, 69 NY2d 365; *People v Eastco Bldg. Servs.*, 23 Misc 3d 864.) II. The City of New York's actions did not extinguish the 1965 Bar Plan and its criminal defense panels, which remain as before. III. Conflict cases may nevertheless be assigned to the Legal Aid Society irrespective of whether or not this Court concludes that the City of New York's actions with respect to the bar plan were appropriate. (*People ex rel. Alpha Portland Cement Co. v Knapp*, 230 NY 48; *Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation*, 75 NY2d 88.)

## OPINION OF THE COURT

CIPARICK, J.

This appeal presents the question of whether the City of New York's 2010 plan for indigent defense, permitting representation by both institutional providers and private attorneys in cases in which a conflict of interest precludes representation by the initial provider, constitutes a valid combination plan within the meaning of article 18-B of the County Law (County Law § 722). Petitioners, various county bar associations, challenged the proposed plan and its implementing regulations (*see* 43 RCNY 13-01 *et seq.*) as violative of County Law § 722 and Municipal Home Rule Law § 11 (1) (e). We conclude that the City may assign conflict cases to institutional providers, that its ability to do so is not contingent on the consent of the county bar associations and that the City's proposed indigent defense plan does not run afoul of the County Law or Municipal Home Rule Law.

### I.

In 1965, the legislature enacted article 18-B of the County Law (County Law § 722) in response to the Supreme Court's landmark decision in *Gideon v Wainwright* (372 US 335 [1963]), which held that the fundamental right to counsel in criminal

cases creates an attendant obligation of the state to provide indigent defendants with representation (*see id.* at 344-345). Accordingly, County Law § 722 mandates that "the governing body of the city in which a county is wholly contained shall place in operation . . . a plan for providing counsel to persons charged with a crime . . . who are financially unable to obtain counsel." Pursuant to section 722, New York City may adopt any one of the following plans for representation:

> "1. Representation by a public defender appointed pursuant to county law article eighteen-A.[1]

> "2. . . . representation by counsel furnished by a private legal aid bureau or society . . .

> "3. (a) Representation by counsel furnished pursuant to either or both of the following: a plan of a bar association in each county or the city in which a county is wholly contained whereby: (i) the services of private counsel are rotated and coordinated by an administrator, and such administrator may be compensated for such service; or (ii) such representation is provided by an office of conflict defender . . . [2]

> "4. Representation according to a plan containing a combination of any of the foregoing."

Subdivision (4) further provides that when the City has not enacted a plan conforming with subdivisions (3) or (4) and "the judge . . . is satisfied that a conflict of interest prevents the assignment of counsel pursuant to the plan in operation . . . the judge . . . may assign any attorney in such . . . city."

Also in 1965, the Association of the Bar of the City of New York (not a party to this case) and petitioners proposed a joint plan for indigent defense (the 1965 Bar Plan) that, consistent with section 722 (4), "combine[d] representation by a private legal aid society [pursuant to subdivision (2)] and by private attorneys [pursuant to subdivision (3)]." Under the 1965 Bar Plan, the county bar associations would submit a list of names

---

1. As the City does not have a public defender, this section does not currently factor into our analysis.

2. The legislature amended County Law § 722 (3) on June 22, 2010 to include its current language (*see* L 2010, ch 56, § 1, part E, § 3). Previously, it read, in relevant part, "counsel furnished pursuant to a plan of a bar association . . . whereby the services of private counsel are rotated and coordinated by an administrator" (*see* L 1965, ch 878, § 1).

of qualified attorneys to administrators, appointed by the Appellate Divisions of the First and Second Judicial Departments and paid by the City, who would prepare and coordinate panels of attorneys pursuant to article 18-B. The 1965 Bar Plan designated the Legal Aid Society as the primary provider of indigent defense services. It further provided that where the "court deems the assignment of other counsel to be required in the interest of justice because of . . . a conflict of interest . . . the court shall appoint counsel" from an 18-B panel. Finally, the 1965 Bar Plan granted the First and Second Departments authority to promulgate rules with respect to the plan's operation.

In November 1965, then Mayor Robert F. Wagner, Jr., issued New York City Executive Order No. 178 establishing a combined option plan as proposed by the bar associations for indigent defense pursuant to County Law § 722 (4). In conformity with the 1965 Bar Plan, Executive Order No. 178 designated the Legal Aid Society as the primary provider of counsel to indigent defendants and stated that "[i]n those cases where by reason of a conflict of interest . . . the Legal Aid Society declines to represent any such defendant, such defendant shall be represented by counsel furnished pursuant to the [Bar Plan]." It should be noted that at that time the Legal Aid Society was the only institutional provider of legal services in New York City.

While in subsequent decades the provision of indigent defense functioned in accordance with the plan established by Executive Order No. 178, it was not wholly without practical alterations. In 1980 and 1991, the First and Second Judicial Departments adopted new rules, which the county bar associations approved, whereby committees designated by the Appellate Division would perform the function of screening attorneys for the 18-B panels (*see* 22 NYCRR 612.0 *et seq.*; 22 NYCRR 678.1 *et seq.*). Beginning in 1996, the City began contracting with other institutional providers in addition to the Legal Aid Society. Presently, institutional providers furnishing indigent defense services also include Staten Island Legal Services, the Bronx Defenders, Brooklyn Defender Services, New York County Defender Services, Neighborhood Defender Service of Harlem and Queens Law Associates.

In June 2008, recognizing that the Legal Aid Society was no longer the sole institutional provider of primary defense counsel, Mayor Michael Bloomberg issued New York City Executive Order No. 118 of 2008, which repealed New York City Executive

Order No. 178 of 1965. Executive Order No. 118 provided that the Office of the Criminal Justice Coordinator (CJC) "shall select Providers through a competitive procurement process," to serve as primary counsel at both the trial and appellate levels. Conflict representation would continue to be provided exclusively by 18-B panel attorneys.

On January 6, 2010, the City adopted chapter 13 of title 43 of the Rules of the City of New York (43 RCNY 13-01 *et seq.*) entitled "Indigent Defense Plan for the City of New York." Of great significance to this appeal, chapter 13 addressed the assignment of conflict counsel, providing:

> "In any case where, due to conflict of interest or other appropriate reason, Providers decline or are unable to represent an indigent person at the trial or on appeal in a criminal matter, counsel shall be furnished by attorneys assigned by the ACP [Assigned Counsel Plan] from the appropriate Criminal Defense Panel of the Appellate Division, First or Second Judicial Department, *or by alternate providers*[3] *selected by the CJC through the City's procurement process*" (43 RCNY 13-03 [emphasis added]).

Thus, chapter 13 permits the assignment of conflict cases to institutional providers in addition to 18-B panel attorneys. Chapter 13 also created the Office of the Assigned Counsel Plan (OACP), which is "overseen by two Administrators in consultation with the Presiding Justices of the First and Second Judicial Departments" and is "responsible for management of the City's Criminal Defense Panels" (43 RCNY 13-01).

In February 2010, as per the procedures established in chapter 13, the City issued a request for proposals (the RFP) inviting institutional bids for the provision of indigent criminal defense services and for the assignment of conflict cases. The RFP stated that "the City is interested in providing representation in conflict cases and anticipates issuing awards to vendors who propose to provide representation in conflict cases."

The City subsequently issued two addendums to the RFP. A February 8, 2010 addendum clarified that "[t]he City has not decided and the RFP does not state that a definite number of providers will be selected for each county." The second

---

**3.** Section 13-01 defines "[p]rovider[s]" as "private institutional legal services organization[s] selected by CJC in accordance with section 13-02," which addresses the procurement of institutional providers.

addendum was issued March 2, 2010, the same day that Mayor Bloomberg issued New York City Executive Order No. 132 of 2010, setting forth the City's new indigent defense plan. Executive Order No. 132 repealed New York City Executive Order No. 178 of 1965 again, but provided that the 18-B panels created by the latter "shall continue to exist and shall be administered in accordance with the rules of the Appellate Division, First and Second Judicial Departments." The second addendum presented a contradiction, however, stating that the City's new indigent defense plan conformed with County Law § 722 (2), the "private legal aid bureau or society" option, and that the prior section 722 (3) option, by which representation was furnished pursuant to "a plan of a bar association," specifically, the 1965 Bar Plan, was "no longer in effect."

Petitioners[4] initiated this hybrid CPLR article 78 proceeding and declaratory judgment action in June 2010 challenging the legality of Executive Order No. 132, 43 RCNY chapter 13, the RFP and its addenda. Petitioners sought, among other things, a judgment declaring that chapter 13, Executive Order No. 132 and the amended RFP violate article 18-B and Municipal Home Rule Law § 11 (1) (e) and declaring any contracts entered into pursuant to the order and RFP invalid. As relevant here, petitioners contended that the City's proposed indigent defense plan was not a combination plan as set forth in County Law § 722 (4) because the county bar associations had not approved of the selective retention and abandonment of portions of the 1965 Bar Plan and, therefore, the new plan did not utilize a "plan of a bar association" pursuant to section 722 (3). Petitioners also moved to preliminarily enjoin respondents, the City of New York, Mayor Bloomberg and the CJC (collectively, the City), from implementing Executive Order No. 132 and the contract procurement process prescribed in the RFP.

Subsequently, on July 13, 2010, Mayor Bloomberg issued New York City Executive Order No. 136 of 2010, which repealed the preceding Executive Orders,

> "except that Criminal Defense Panels created under the authority of Executive Order [No.] 178 of 1965

---

4. Petitioners include the New York County Lawyers' Association, the Bronx County Bar Association, the Brooklyn Bar Association, the Queens County Bar Association and the Richmond County Bar Association. The New York Criminal Bar Association, Inc. and Anastasios Sarikas, a member of the Assigned Counsel Plan of the City of New York, were added as intervenors-petitioners.

"and pursuant to the plan submitted by bar associations in accordance with subdivision 3 of section 722 of the County Law shall continue to exist and shall be administered in accordance with the rules of the Appellate Division, First and Second Judicial Departments."

In response to Executive Order No. 136, petitioners amended their pleading, asserting that the most recent order "attempts to selectively preserve portions of the 1965 Bar Plan while rejecting other portions" without the approval of the county bar associations in violation of County Law § 722 (3).

The City answered, asserting that its indigent defense plan is a combination plan pursuant to County Law § 722 (4), that the second addendum indicating otherwise was a misstatement, that "the criminal defense panels of private attorneys continue to be administered in the same manner [as prescribed by the 1965 Bar Plan] and [that] the role of the bar associations has not been changed or modified by the City in any way." The City cross-moved for summary judgment.[5]

Supreme Court granted the petition to an extent not relevant to this appeal, otherwise dismissed the petition with prejudice and granted the City's motion for summary judgment (*see Matter of New York County Lawyers' Assn. v Bloomberg*, 30 Misc 3d 921 [Sup Ct, NY County 2011]). A majority of Appellate Division justices affirmed (*Matter of New York County Lawyers' Assn. v Bloomberg*, 95 AD3d 92 [1st Dept 2012]), finding, as did Supreme Court, that section 722 (2) authorized the City to assign conflict cases to institutional providers without petitioners' consent, that section 722 (3) as amended did not reserve exclusive authority over the provision of conflict counsel to the county bar associations and that the City's indigent defense plan "is a lawful 'combination' plan under County Law § 722 (4)" (*id.* at 95). The majority determined that any differences between the bar plan component of the City's proposed combination plan and the 1965 Bar Plan were immaterial (*see id.* at 102). The dissenting justices would have granted the petition, finding that "[t]he City's Bar Plan is markedly different from the version devised and approved by the County Bars in 1965," and that regardless of how the court "characterize[d] the changes [between the plans], the ineluctable reality is that a

---

5. The Legal Aid Society moved without opposition to intervene as intervernor-respondent and joined in the City's motion.

'Bar Plan' that has not been adopted, but instead has been rejected by the bar associations, is not 'a plan of a bar association' as contemplated by County Law § 722 (3)" (*id.* at 111, 114).

Petitioners appeal pursuant to CPLR 5601 (a) and we now affirm.

## II.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]; *see also Matter of M.B.*, 6 NY3d 437, 447 [2006]). To that end, in our present interpretation of County Law § 722, we must look first to the statutory text, which is "the clearest indicator of legislative intent" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). We are also guided in our analysis by the familiar principle "that a statute . . . must be construed as a whole and that its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979]).

Petitioners contend that County Law § 722 neither contemplates nor allows the City's assignment of conflict cases to institutional providers. According to petitioners, because section 722 addresses the provision of conflict counsel in subdivisions (3) and (4) only, conflict counsel may only be appointed by the bar associations or the judiciary pursuant to those provisions. Specifically, petitioners rely on the 2010 amendment to section 722 (3), which allowed for representation pursuant to a bar plan whereby an "office of conflict defender" would provide conflict representation (*see* County Law § 722 [3] [a] [ii]). Arguing that the phrase "office of conflict defender" must be read broadly to encompass institutional providers, petitioners assert that the county bar associations alone possess the authority to appoint institutional providers in conflict cases. By necessity, then, the services of institutional providers under section 722 (2), which omits reference to conflicts of interest, are limited to primary representation. We do not agree with petitioners' interpretation and conclude that the statute permits the City to assign conflict cases to institutional providers of indigent defense services.

Section 722 compels the City to "place in operation . . . a plan for providing counsel to persons charged with a crime . . . who are financially unable to obtain counsel." As the United

States Supreme Court has stated, "[w]here a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest" (*Wood v Georgia*, 450 US 261, 271 [1981]). Thus, it follows that the City's discretion to devise a plan for the provision of indigent criminal defense must necessarily extend to conflict representation. We cannot interpret "a plan for providing counsel" as pertaining only to primary counsel when no such limitation is evident from the general language chosen by the legislature (*see Majewski*, 91 NY2d at 583; *Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 3 NY3d 563, 568 [2004]). Nor can we construe section 722 (2), allowing representation by a "private legal aid bureau or society," as being similarly limited. Rather than circumscribe the City's ability to respond to conflicts of interest, we think it more likely, when construing the statute as a whole, that the legislature intended to permit the City to create a comprehensive indigent defense plan that accounts for such a frequently occurring circumstance. That authority includes a plan in which conflict cases are assigned to institutional providers as well as 18-B lawyers.

The 2010 amendment to section 722 (3) does not alter our analysis; it simply gives municipalities yet another option for the handling of conflict cases—representation by an office of conflict defender pursuant to a bar plan (*see* County Law § 722 [3] [a] [ii]).

Our reading is also fully consistent with County Law § 722 (4). That section allows for representation of indigent defendants "according to a plan containing a combination of" section 722 (1), (2) or (3). It also allows the court to assign counsel where the City has not "placed in operation a plan conforming to" subdivision (3) or a combination plan under subdivision (4), and the court "is satisfied that a conflict of interest prevents the assignment of counsel pursuant to the plan in operation." In accordance with our analysis, nothing in County Law § 722 would prevent the City from implementing a plan whereby both primary and conflict counsel are furnished by various institutional providers pursuant to section 722 (2). In that case, because the plan in operation would most often provide a mechanism for resolving a conflict of interest, the occurrence of a conflict would typically not trigger the court's discretionary authority to appoint counsel unless, of course, a third conflict exists. Thus, petitioners' assertion that County Law § 722 reserves authority over the assignment of conflict representation

exclusively to the county bar associations or, alternatively, to the judiciary is inconsistent with the statutory scheme.

Having concluded that the City may appoint institutional providers to conflict cases independently of the bar associations and the court, we turn to the question of whether the City's proposed indigent defense plan is a valid combination plan adopted pursuant to County Law § 722 (4). Petitioners assert that the purported "bar plan" component of the City's proposed plan is not actually "a plan of a bar association" under section 722 (3) as the bar associations have not ratified, and in fact object to, the City's alterations to the 1965 Bar Plan. Of those alterations, petitioners point primarily to the departure from that portion of the 1965 Bar Plan designating conflict representation exclusively to 18-B panel attorneys. If we are to effectuate the legislative intent underlying County Law § 722, however, we cannot invalidate the City's proposed plan on that basis.

To condition the City's authority to implement a combination plan incorporating a subdivision (3) component either on the adoption of the 1965 Bar Plan in its entirety or on the bar associations' consent to abandon that portion of the plan reserving conflict representation exclusively to 18-B attorneys would be to allow the bar associations to unilaterally block the City from adopting a plan for conflict representation that includes institutional providers. In effect, the bar associations would control the City's ability to fulfill its statutory mandate to formulate a comprehensive plan for indigent defense. We do not believe the legislature intended such a result. Rather, County Law § 722 appears to contemplate precisely what occurred here—that the City, in response to needs actual or perceived, could implement a combination plan apportioning conflict representation among both institutional providers and private counsel retained pursuant to the selection method created by the 1965 Bar Plan, the 18-B panels.

Petitioners also point to other changes, which they claim run counter to the 1965 Bar Plan and violate County Law § 722. First, petitioners assert that the City's proposed plan impermissibly transfers authority to determine whether a conflict of interest exists from the judiciary to institutional providers. We disagree. The 1965 Bar Plan stipulated that the court would appoint an 18-B attorney where it "deems the assignment of other counsel to be required in the interest of justice because of . . . a conflict of interest." However, nothing in the 1965 Bar Plan

states that the court, rather than the institutional provider, had the exclusive authority to determine that a conflict of interest existed in the first instance. Concomitantly, New York City Executive Order No. 178 of 1965 provided that "[i]n those cases where by reason of a conflict of interest or other appropriate reason . . . *the Legal Aid Society declines to represent any such defendant*, such defendant shall be represented by counsel furnished pursuant to the [1965 Bar Plan]" (emphasis added). Moreover, in practice it is typically counsel who must determine whether a conflict exists as a matter of ethical obligation (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.7-1.10). Thus, what petitioners contend is a major change is, in effect, no change at all.

Next, they assert that in creating the OACP, the City's proposed plan usurped management authority over the 18-B panels from judicially appointed administrators and placed it under executive control. OACP, however, is "overseen by two Administrators in consultation with the Presiding Justices of the First and Second Judicial Departments" (43 RCNY 13-01) and, as the majority below found, "takes no authority away from the [county bar associations]" (*Matter of New York County Lawyers' Assn.*, 95 AD3d at 102). Petitioners also assert that the City's proposed plan impermissibly replaces the county bar associations' role over the selection of 18-B panel attorneys with "screening and advisory committees" designated by the First and Second Judicial Departments. While the 1965 Bar Plan did not provide for the Appellate Division's involvement in the screening of 18-B attorneys, it is undisputed that in 1980 and 1991, the county bar associations approved new sections of the Appellate Division rules that created the very screening committees for 18-B panels to which they now object (*see* 22 NYCRR 612.0 *et seq.*; 22 NYCRR 678.1 *et seq.*). Thus, the City's proposed plan merely codifies a change that the bar associations ratified and that has been in practice for decades.

Finally, we reject the argument that the City's 2010 plan violates Municipal Home Rule Law § 11 (1) (e), which prohibits the adoption of a local law that supercedes a state statute if such law affects the courts. No such situation exists here.

We thus conclude and agree with the majority below that the City's 2010 plan for indigent defense constitutes a valid combination plan under County Law § 722 (4). Construed as a whole, section 722 affords the City the flexibility to appoint institutional providers to represent indigent defendants where a

conflict of interest precludes representation by the primary provider. As such, the City, in the exercise of its discretion, was not required to adopt that portion of the 1965 Bar Plan reserving conflict cases exclusively to 18-B panel attorneys in order to implement a combination plan incorporating "a plan of a bar association" pursuant to County Law § 722 (3). Importantly, the 18-B panels created by the 1965 Bar Plan remain in place and are expressly preserved by the executive order governing the City's 2010 plan. The City's plan thus allows for the defense of indigent criminal defendants by the Legal Aid Society, other institutional providers and the private bar, as a combination plan that serves the needs of the clients but also recognizes fiscal realities to be borne by the City.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Chief Judge LIPPMAN (dissenting). While I do not disagree with that part of the majority's analysis concluding that a County Law § 722 (2) indigent defense plan may draw upon institutional providers for both primary and conflict representation, I do not view that conclusion as necessary or even helpful to a correct analysis of whether the indigent defense plan now before us comports with the County Law.

As the majority has so meticulously detailed, the City, after purporting to jettison the combined (County Law § 722 [4]) plan that had been in place since 1965 and replace it simply with a section 722 (2) plan in which panel attorneys would play no part, has now clarified that that was not its intention at all and that its new plan is, like the plan it is to supplant, actually a County Law § 722 (4) combination plan, in accordance with which legal services would be provided by private practitioners pursuant to a section 722 (3) bar association plan, and by private institutional providers pursuant to section 722 (2). The salient and transformative difference between the new and old plans is that under the new plan institutional providers may be called upon to provide either primary or conflict representation, whereas under the old plan, both as formulated by the bar associations and implemented by the City, representation in conflict cases was to be handled exclusively by panel attorneys. The new plan reduces, and indeed will likely marginalize the participation of panel attorneys, dramatically shifting from them to institutional providers retained through competitive bidding, the conflict defense function.

The legal issue immediately posed by this shift is not whether it is within the City's power to accomplish, but whether it is permissibly accomplished by means of the particular section 722 (4) combination plan the City has evidently settled upon. That plan, like its forerunner, purports to rely in essential part upon "[r]epresentation by counsel furnished pursuant to . . . a plan of a bar association" (County Law § 722 [3] [a]). Indeed, the new plan purports to rely on the very same bar association plan used in connection with the now repeatedly repealed 1965 plan (*see* majority op at 718-719). However, no bar association has agreed to the use of the 1965 plan in the dramatically different context that would be created by the expanded subdivision (2) component of the City's new plan.

As the majority acknowledges, and as is in any case clear from the record, it was an express element of the 1965 bar association plan and of the consequent City plan adopted in the same year that panel attorneys would be assigned all of the matters in which the then sole private institutional provider,[1] the Legal Aid Society, was conflicted. Stripped of that critical allocation of responsibility, the bar association plan is that in name only; it is, in its starkly pared aspect, simply a plan of the City attributable to a bar association only by highhanded assertion. The 1965 bar association plan was not designed like a bit of LEGO for use in a range of interchangeable settings at the City's option. Rather, it contemplated a particular relation between institutional and panel providers with specific, well-defined functions assigned each. Plainly, that relation has been fundamentally altered in the City's new plan.

Inasmuch, then, as the City's presently proposed combination plan lacks an essential combinative element, namely "a plan of a bar association," it is not a valid County Law § 722 (4) plan and that is where the analysis logically must find its point of repose. The majority, however, would avoid this conclusion, not because it is sensible to suppose that the bare retention of the panels is or may be deemed "pursuant to . . . a plan of a bar association," but because it finds unacceptable the notion that bar associations may, by withholding consent to a City plan for the provision of panel attorneys, "unilaterally block the City from

---

1. While it is true that there have since 1996 been institutional defenders other than Legal Aid integrated as service providers within the City plan, those providers merely enlarged the pool of primary defenders; they were not used to supplant the panel attorneys from their agreed upon role as conflict defenders under the original City combination plan.

adopting a plan for conflict representation that includes institutional providers" (majority op at 723). But, of course, if one accepts the majority's conclusion that conflict representation may be provided by institutional providers under a simple section 722 (2) plan, it cannot be that the bar associations have the veto power the majority ascribes to them.

While, under the statute, the absence of "a plan of a bar association" operates to prevent the City from devising a subdivision (3) plan or a subdivision (4) plan depending on a subdivision (3) component, these limitations manifestly do not prevent the City from fulfilling its statutory mandate to formulate a comprehensive plan for indigent defense. And, given the majority's understanding of what a subdivision (2) plan may include, it is clear that the City may adopt a plan that will meet its dominant motivating objective of shifting conflict representation to institutional providers. Indeed, the present plan's subdivision (2) component, standing alone, would appear independently to be statutorily compliant as a subdivision (2) plan.

Although the City may prefer a combination plan involving the retention of panel attorneys so as to assure that there will be no situation in which a court will appoint conflict counsel pursuant to section 722 (4),[2] that is not a preference that the statute may be read to accommodate, unless there is in fact a bona fide subdivision (3) bar association plan. Certainly, the existence of the preference does not justify disregarding the statutory condition of its gratification.

The City doubtless has considerable discretion to fashion an indigent defense plan, but like any other locality charged with the obligation of devising such a plan, its discretion is limited by County Law § 722; it does not have laissez-faire to construct a plan except from the elements the statute makes available (*see e.g. Goehler v Cortland County*, 70 AD3d 57 [3d Dept 2009]

2. The statute provides in relevant part:
   "when the county or the city in which a county is wholly contained has not placed in operation a plan conforming to that prescribed in this subdivision or subdivision three of this section and the judge, justice or magistrate is satisfied that a conflict of interest prevents the assignment of counsel pursuant to the plan in operation . . . the judge, justice or magistrate may assign any attorney in such county or city and, in such event, such attorney shall receive compensation and reimbursement from such county or city which shall be at the same rate as is prescribed in section seven hundred twenty-two-b of this article" (County Law § 722 [4]).

[declaring the County's creation of an office of conflict attorney invalid because the newly created office did not correspond to any statutorily sanctioned option]).[3] Here, because the City's combination plan relies upon an element that does not exist, it does not conform to the statute and is violative of Municipal Home Rule Law § 11 (1) (e). This does not mean that the City should be indefinitely stymied in implementing an indigent defense plan, only that it cannot while complying with the statute implement the present plan with its subdivision (3) piece. What would remain after dispensing with that defective element would, I believe, be a valid subdivision (2) plan on the basis of which the City could proceed. This would, as noted, entail judicial appointment of counsel in conflict situations where institutional conflict defenders were unavailable, but that is what the statute requires where there is no plan of a bar association for the provision of private counsel.

The City may have very sound policy reasons for the change it proposes, but as it goes about altering, perhaps irretrievably, the network of indigent defense service providers that has been in place for some 47 years, it would seem more than ordinarily important to insist upon compliance with the limitations contained in County Law § 722, among them that bar association consent be obtained as a condition of a City plan purporting to rely on "a plan of a bar association." This is not simply a question of logic and manners. The purpose of the statute is to assure that there will be quality representation for indigent defendants pursuant to the mandate of *Gideon v Wainwright* (372 US 335 [1963]), and toward that end the legislature has, quite reasonably, required localities to act cooperatively with the bar associations whose members are to be drawn upon for their professional services. If the panels are to be retained and usefully administered as a representational resource, it would be prudent and natural that it would be according to a sustaining plan devised not only by the City but also in part by legal professionals concerned first and foremost with the delivery of quality representation. That is, in any event, what the statute requires and what municipal discretion therefore is not appropriately invoked to excuse.

---

3. Section 722 (3) has since been amended to permit conflict defense services to be provided by an office of conflict defender pursuant to a plan of a bar association (L 2010, ch 56, § 1, part E, § 3).

Judges GRAFFEO, READ and JONES concur with Judge CIPARICK; Chief Judge LIPPMAN dissents in a separate opinion in which Judges SMITH and PIGOTT concur.

Order affirmed, without costs.